UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:20-CV-00014-TBR-LLK

JOSEPH JARVIS                                           PLAINTIFF

v.

HINES FURLONG LINE, INC.                           DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Hines Furlong Line, Inc.'s Motion for Summary Judgment. [DN 21]. Plaintiff Joseph Jarvis responded. [DN 25]. Defendant replied. [DN 26]. The motion is ripe for adjudication. For the reasons stated below, the motion is **GRANTED**.

**I. Background**

Plaintiff Joseph Jarvis ("Jarvis") brought this action against Defendant Hines Furlong Line, Inc. ("Hines Furlong"), alleging claims under the Jones Act, 46 U.S.C. § 30104, and general maritime law for negligence, unseaworthiness, and maintenance and cure. [DN 1]. In his complaint, Jarvis alleges that he was a crew member of a motor vessel owned by Hines Furlong on or around April 12, 2019, when he was injured lifting and moving water pumps. *Id.* at 1-2 ("As a result of Defendant's negligence and the unseaworthiness of the Vessel, Plaintiff sustained severe, painful, and debilitating injuries to his back and other parts of his body.").

Jarvis sets forth that he worked as a deckhand first for Hunter Marine, and then for Hines Furlong when it acquired Hunter Marine in December 2017. [DN 2 at 2]. Jarvis further says that he was a deckhand aboard the vessel the M/V MAE ETTA HINES when he began suffering from a non-occupational illness in February 2018. *Id.* The parties agree that in March 2018, Jarvis was permitted to continue his employment in the shipyard at National Maintenance in Paducah,

1

Kentucky where the M/V WARREN HINES was undergoing repairs. [DN 21 at 2]; [DN 25 at 2]. The parties explain that reassignment to the shipyard, as opposed to continuing work aboard the M/V MAE ETTA HINES, allowed Jarvis to be closer to home and urgent medical treatment in the event it was needed to treat his non-occupational illness. *Id.* Jarvis alleges that during the time he was working in the shipyard on repairs of the M/V WARREN HINES, he suffered a back injury. [DN 21 at 4]; [DN 25 at 4] ("He was diagnosed with a herniated disc at the L5-S1 level and underwent a microdiscectomy on July 1, 2019 . . . Mr. Jarvis has had ongoing and increasing lower back pain complaints, ultimately resulting in a new recommendation for an additional surgery, a lumbar decompression and fusion, made earlier this year by Dr. Strenge.") (footnotes omitted).

Hines Furlong argues that because Jarvis was reassigned to work in the shipyard, he was "a land-based maritime laborer, *not* a seaman," and therefore, he cannot recover under the Jones Act or general maritime law. [DN 21 at 1]. Moreover, the basis for Hines Furlong's motion for summary judgment is that Jarvis was not a seaman. Jarvis responds that summary judgment should be denied because there are genuine fact issues that preclude summary judgment. [DN 25 at 1]. Specifically, Jarvis argues that he was a seaman despite his reassignment to work in the shipyard. As further explained below, the Court finds that Jarvis was not a seaman, and thus, Hines Furlong's motion for summary judgment will be granted.

## II.  Standards

### a. Summary Judgment Standard

A district court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Thus, the initial burden of establishing no genuine dispute of material fact rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court "need consider

only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). If the moving party satisfies this burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Id.* at 324. Where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may treat that fact as undisputed. Fed. R. Civ. P. 56(e).

"Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and affidavits show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Williams v. Maurer*, No. 20-1996, 2021 WL 3629921, at *7 (6th Cir. Aug. 17, 2021) (quoting *Payne v. Novartis Pharm. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014)). "A fact is 'material' if the underlying substantive law identifies the fact as critical." *Morgan v. Kentucky*, No. 3:17-CV-474-CHB, 2021 WL 3684249, at *3 (W.D. Ky. Aug. 19, 2021) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Thus, '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). "A 'genuine' issue exists if 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Id.* (quoting *Anderson*, 477 U.S. at 249). "In reviewing a decision on a motion for summary judgment, we view the factual evidence and draw all reasonable inferences in favor of the non-moving party." *Williams*, 2021 WL 3629921, at *7 (quoting *See v. City of Elyria*, 502 F.3d 484, 491 (6th Cir. 2007)). "The ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Id.* (quoting *Payne v. Novartis Pharm. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014)).

### b. Seaman Standard

Jarvis argues, and Hines Furlong appears to agree, that summary judgment on a party's status as a seaman is appropriate only where the law and facts will only support one conclusion. [DN 21 at 5 (citing *Chandris, Inc. v. Latsis*, 515 U.S. 347, 371 (1995)); *McDermott International, Inc. v. Wilander*, 498 U.S. 337, 356 (1991))]; [DN 25 at 6-7 (citations omitted)]. Further, the parties agree that the two-part test established by the Supreme Court in *Chandris* to determine whether a maritime employee is a seaman applies here. [DN 21 at 6]; [DN 25 at 7]. As this Court has previously stated:

> In *Chandris, Inc. v. Latsis*, 515 U.S. 347 (1995), the Supreme Court held that the two essential requirements for seaman status are (1) that "an employee's duties must 'contribut[e] to the function of the vessel or to the accomplishment of its mission,'" and (2) that the employee "must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Id.* at 368 (citations omitted). The Court explained that "[t]he fundamental purpose of this substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea." *Id.*

*Roberts v. Ingram Barge Co.*, No. 5:06-cv-00210-R, 2009 WL 1034111 (W.D. Ky. Apr. 16, 2009).

### III. Discussion

Hines Furlong argues that Jarvis must qualify as a seaman to recover under the Jones Act for negligence or under general maritime law of the United States for unseaworthiness or maintenance and cure, and because he does not qualify as a seaman, his claims must be dismissed in their entirety. [DN 21 at 1]. Jarvis does not dispute Hines Furlong's argument that only seaman may recover under the claims Jarvis asserts, and the Court finds no reason to question it.[1] Thus,

---

[1] The Jones Act embodies a "policy of providing an expansive remedy for *seamen* who are injured while acting in the course of their employment." *Taylor v. TECO Barge Line, Inc.*, 517 F.3d 372, 382-83 (6th Cir. 2008) (quoting *Rannals v. Diamond Jo Casino*, 265 F.3d 442, 447 (6th Cir. 2001)) (internal quotation marks omitted) (emphasis

4

Jarvis may only recover under the claims he asserts if he qualifies as a seaman. Nonetheless, Jarvis urges the Court to deny summary judgment, arguing that genuine fact issues remain which should be left to the jury. [DN 25 at 1].

Hines Furlong has the initial burden of showing that there is no genuine dispute of material fact. Hines Furlong argues: (1) Jarvis lost his status as a seaman when he was permanently reassigned to a land-based position; (2) Jarvis did not have a connection to a vessel in navigation because the M/V WARREN HINES was not in navigation as a matter of law; (3) Jarvis did not have a connection to a vessel in navigation that was substantial in nature. [DN 21 at 5-13]. Jarvis responds, challenging each of these claims. However, because the Court finds that the M/V WARREN HINES was not in navigation, the Court will grant the summary judgment motion.

Even assuming that Jarvis can show that he satisfies the first prong of the *Chandris* test, the Court finds that he cannot satisfy the second prong of the test. Namely, Jarvis cannot demonstrate that he had a connection to a vessel in navigation that was substantial in terms of duration and nature. As Hines Furlong states, "the fact that Plaintiff had worked on the rivers as a deckhand/seaman for multiple companies in previous years has no relevance to whether he was a seaman after he was reassigned to work in the shipyard on a vessel that was out of navigation." [DN 26 at 4].

In its motion, Hines Furlong indicates that the M/V WARREN HINES spent 21 months in the Shipyard undergoing "a complete refurbishment." [DN 21 at 3]. Hines Furlong sets out the details of the refurbishment as follows:

---

added). Further, "[m]aintenance and cure is [a shipowner's obligation] to provide a *seaman* with food and lodging when he becomes sick or injured in the ship's service; and it extends during the period when he is incapacitated to do a seaman's work and continues until he reaches maximum medical recovery." *Smith v. Omega Protein, Inc.*, 459 F. Supp. 3d 787, 794 (S.D. Miss. 2020) (quoting *Vaughan v. Atkinson*, 369 U.S. 527, 531 (1962)) (brackets in original) (emphasis added). Finally, the duty to provide a seaworthy ship is owed only to seamen. See *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 208 n. 6 (1996); *Park v. Stockstill Boat Rentals, Inc.*, 492 F.3d 600, 604 (5th Cir. 2007).

> By all accounts, the work performed on the WARREN W. HINES during the 21-month tenure in the Shipyard was extensive. It was dry docked on at least two separate occasions . . . All the drive gear, propellers, shafts, and rudders were removed. The fuel tanks were emptied and cleaned; the hull was re-plated along the sides. All lube oil was removed. The interior cabins were gutted down to the bare steel and completely refurbished. The electrical and plumbing systems were replaced or overhauled. A new cooling system for the engines was installed. The hull was extensively repaired, including replacing hull plating on the bow because the hull had been damaged in a grounding. A drive shaft was taken out and repaired, and a gearbox was overhauled. The tug was not self-propelled while in the Shipyard—during its rare times of movement, it had to be moved by means of a harbor tug. In total, the vessel remained in the Shipyard, "out of service" from September 19, 2017 to June 25, 2019.

*Id.* (internal citations omitted).

Jarvis argues first that the question of whether a vessel is "in navigation" is a question that generally should be left for the jury. [DN 25 at 14 (citing *Chandris*, 515 U.S. at 373)]. The Supreme Court stated in *Chandris* that "the underlying inquiry whether a vessel is or is not 'in navigation' for Jones Act purposes is a fact-intensive question that is normally for the jury and not the court to decide." 515 U.S. at 373 (citations omitted). However, the Court in *Chandris* also stated that "major renovations can take a ship out of navigation, even though its use before and after the work will be the same." *Id.* at 374 (quoting *McKinley v. All Alaskan Seafoods, Inc.*, 980 F.2d 567, 570 (9th Cir. 1992)). Hines Furlong argues that the M/V WARREN HINES's refurbishment rendered the vessel out of navigation because the nature of repairs was extensive, and the repairs occurred over an extended period of time. *Id.* at 8-10. Further, Hines Furlong argues that the M/V WARREN HINES was "practically incapable of maritime transport" because it could only be moved by harbor tugs. *Id.* at 10.

Jarvis counters that the M/V Warren Hines was not withdrawn from navigation because "[i]t was placed back into the water after each time in the dry dock, was moved around to various locations in the yard while in the water, and was even in the water at the time Mr. Jarvis was

carrying heavy water pumps on the vessel on the date of his injury." [DN 25 at 15]. Jarvis also cites *Senko v. LaCross Dredging Corp.*, 352 U.S. 370, 373 (1957) for its statement that a crew member of a transoceanic liner would still be covered by the Jones Act even when "confined to berth for lengthy periods, and while there the ship is kept in repair by its 'crew.'"

The Court is not persuaded by these arguments. The extent of repairs conducted on the vessel, and the length of time during which the ship was incapable of use for maritime transport and only able to be moved by harbor tugs rendered it out of navigation. *Stewart v. Dutra Const. Co.*, 543 U.S. 481, 497 (2005); [DN 21-3 at 4-5]. Hines Furlong has shown that there is no material factual dispute on the issue of whether M/V WARREN HINES was a vessel in navigation.

While finding that Jarvis was not engaged in work on a vessel of in navigation because the M/V WARREN HINES was not in navigation would be dispositive of the issue of Jarvis's status as a seaman, Jarvis argues that he still had a substantial connection to vessels or an identifiable fleet of vessels in navigation because his reassignment to the M/V WARREN HINES was only temporary, and when "viewed in totality," the time he spent working on vessels in navigation during his total period of employment with Hines Furlong and its predecessor company shows that he spent more than half of his time under their employ as a seaman aboard the M/V MAE ETTA HINES. [DN 25 at 12]. Further, Jarvis argues that he was not permanently reassigned to the M/V WARREN HINES, as his placement in the shipyard was only temporary pending release from his physician. *Id.* at 13. However, Jarvis stated in his deposition that he was "released for full duty" in May or June of 2018, yet he remained with the M/V WARREN HINES until around the time of his alleged injury in April 2019. [DN 25-2 at 14].

The parties agree that "if a maritime employee receives a new work assignment in which his essential work duties are changed, he is entitled to have the assessment of the substantiality of

7

his vessel-related work made on the basis of his new position." [DN 21 at 6-7 (citing *Chandris*, 515 U.S. at 372)]; [DN 25 at 13 (citing *Chandris*, 515 U.S. at 372)]. However, Jarvis argues in essence that he did not actually obtain a new position because his assignment to the M/V WARREN HINES was only temporary and because his essential work duties did not change. [DN 25 at 9-16 ("There was no permanent, much less fundamental, reassignment given or made to Plaintiff, and so the totality of his employment with Hunter Marine and its successor, Hines, should dictate the evaluation of substantiality of his connection to Hines/Hunter's vessels.")].

As to the permanency of Jarvis's position with the M/V WARREN HINES, Hines Furlong argues that "[a] reassignment is considered permanent if it is 'for an indefinite period." [DN 26 at 5 (citing *Smith v. Nicklos Drilling Company*, 841 F.2d 598, 600 (5th Cir. 1988))]. Moreover, Hines Furlong states that because Jarvis anticipated working in the shipyard until refurbishment of the W/V WARREN HINES was complete, his assignment there was indefinite, and thus, permanent as a matter of law. *Id.* ("In short, Plaintiff was indefinitely, and thus permanently, reassigned to the shipyard in the Spring of 2018, and his job duties were substantially and fundamentally different than when he was working as a deckhand out on the rivers."). Jarvis contends that there was no expectation his reassignment was permanent, and his supervisor testified that his assignment to the shipyard was intended to be temporary. [DN 25 at 14 (citing DN 25-5 at 8)]. However, as Jarvis recognizes, his reassignment to the M/V WARREN HINES was intended to endure for the indefinite period during which he awaited release from his doctor. [DN 25-2 at 14]. Thus, the Court finds that Jarvis had been reassigned to the shipyard conducting repairs on the M/V WARREN HINES, and the Court's assessment is appropriately based on the new position.

As to Jarvis's argument that his essential work duties had not changed, and therefore, he had not obtained a new position, Hines Furlong contends, "Plaintiff's job in the shipyard did not

include any of the duties of a seaman/deckhand on a navigating towboat where he experienced the special hazards and disadvantages of a seaman exposed to the perils of the sea." [DN 26 at 5]. Hines Furlong also contends that Jarvis's duties when serving aboard a towboat on navigable waterways involved "checking tow," or "making sure the tow of barges stayed together as a unit and did not take on water and sink." *Id.* Hines Furlong points to the deposition testimony of Lucas Green, another employee who worked as a deckhand before being reassigned to the shipyard. *Id.* (citing DN 21-2 at 15). Green testified that the job in the shipyard was "totally different to being on a line boat" as "you might be pulling wires one day, you might be painting one day, you might be chipping one day. Tons of different things. One of a thousand different things you could have been doing." [DN 21-2 at 15]. Without citation, Jarvis argues that "he continued to perform deckhand work on the vessel while it was undergoing repairs." [DN 25 at 12]. Further, Jarvis argues that "the only change that was made to Plaintiff's job title or description at any time while working in the shipyard is that he was promoted to the position of oiler." *Id.* at 13. The Court does not find these arguments sufficient to create a genuine dispute of material fact on the issue of whether Jarvis's job duties changed when he relocated to the shipyard to conduct repairs on the M/V WARREN HINES. Accordingly, the Court finds that Jarvis's essential work duties changed when he was reassigned to the shipyard, and the assessment of his vessel-related work is appropriately based on the new position.

      Because the Court finds that Jarvis received a new work assignment, the Court's evaluation of whether Jarvis had a substantial connection to a vessel in navigation relates to the M/V WARREN HINES, and not the totality of vessels he worked on during his tenure with Hines Furlong and its predecessor company. And, as previously stated, the Court finds that the M/V WARREN HINES was not a vessel in navigation because of the extent of repairs it underwent and

the duration that such repairs were ongoing. Accordingly, the Court agrees with Hines Furlong that Jarvis cannot claim status as a seaman such that he may recover under the claims alleged in his complaint. Accordingly, Hines Furlong's motion for summary judgment, [DN 21], is **GRANTED**, and the case is **DISMISSED**.

### IV.   Conclusion

Defendant Hines Furlong Line, Inc.'s Motion for Summary Judgment, [DN 21], is **GRANTED**. This case is **DISMISSED** in its entirety. **IT IS SO ORDERED**.

**Thomas B. Russell, Senior Judge**
**United States District Court**

September 2, 2021

cc: counsel